FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

99 JAN 25 PM 1: 46

U.S. DISTRICT COURT
N.D. OF ALABAMA

BENNIE CARTER,              )
                            )
        Plaintiff,          )
                            )   CV-97-P-0645-S
-vs.-                       )
                            )
NEW SOUTH FEDERAL,          )            ENTERED
                            )
        Defendant.          )         JAN 2 5 1999

## MEMORANDUM OPINION

Before the court is the defendant's Motion for Summary Judgment, filed on February 2, 1998. The motion was heard at the April 17, 1998 motion docket, and was thereafter taken under submission. The plaintiff claims that New South Federal ("New South") denied him an automobile loan because of his race in violation of § 1981. For the reasons expressed below, the defendant's motion is due to be granted.

### Facts

On March 31, 1995, the plaintiff, a black male, decided to purchase a 1992 Honda Accord EX from a Honda dealership in Birmingham, Alabama. An employee of the dealership gave the plaintiff a standard credit application form that the dealership would send to various lending institutions. The plaintiff suggested that the dealership send his loan application to New South because the plaintiff worked for a New South affiliate company called Collateral Mortgage.[1] The

---

[1] At New South, credit information is submitted either electronically or over the phone, and a data entry operator creates a computer record "profile" for the loan applicant based on income, debt-to-income ratio, past credit history, job tenure, home ownership, etc.

1

dealership faxed the plaintiff's loan application to New South that same day.[2]

New South loan officer Deleida Johnson, a white female, reviewed the plaintiff's "App Package," which included a loan application and two credit reports. The App Package did not indicate the plaintiff's race. What the App Package did show, however, was that the plaintiff had been in his job for one year, that he was renting an apartment, that he made $2,300.00 per month, and that he had a disposable income of $1,035.00 per month. One of the credit reports awarded the plaintiff a "Beacon Score" of 574, which was lower than the scores of most New South automobile loan customers.[3] Also, the credit reports indicated that he had been in the credit bureau since 1988, that the most money he had ever borrowed was $2,125.00 to buy a used car, and that he had some slow credit in the past, although he had paid all of his debts.

After reviewing the plaintiff's file, Johnson decided that New South should not ~~to~~ make the loan to the plaintiff. There is no evidence that Johnson knew that the plaintiff was black. Additionally, when Collateral Mortgage or New South Federal employees apply for loans, apparently senior officers of New South also discuss the loans. In fact, it appears that only a senior officer can approve a New South Federal or Collateral Mortgage employee loan. In the plaintiff's case, the senior officer who reviewed his file was Mr. Otis, a white male. According to the defendant, by the time Otis reviewed the plaintiff's loan application, the plaintiff had already obtained a loan from

---

[2] According to the plaintiff's loan application, the purchase price for the car was $17,051.00. After subtracting his trade-in amount, the plaintiff still needed to borrow $15,156.00.

[3] A "Beacon Score" is a score given by a credit bureau to evaluate an applicant's creditworthiness. Although New South did not have a specific requirement for Beacon Scores in 1995, the current New South guidelines require an applicant to have a Beacon Score of at least 600 for its prime lending products.

2

another bank and no longer needed the loan from New South[4]. As a result, Otis affirmed the original decision of the loan officer.

Sometime after the plaintiff was denied the loan with New South, he called Mr. Otis. According to the plaintiff, Mr. Otis took some information from the plaintiff regarding his loan application and said that he would have to speak with Larry Nelson, New South's Senior Vice President. When the plaintiff called again, Mr Otis told the plaintiff that New South could not approve the loan but offered no reasons. The plaintiff admits that Otis never stated, or even mentioned, the plaintiff's race. New South subsequently mailed a letter to the plaintiff concerning the loan which stated that the principal reasons for New South's decision were the plaintiff's "Prior Credit History" and "High Credit Too Low." Apparently, Regions Bank also denied the plaintiff a loan under the same terms as those proposed to New South.

The plaintiff filed suit on February 24, 1997 alleging that New South's denial of his automobile loan application violated § 1981 and the Equal Credit Opportunity Act, 15 U.S.C. § 1691 ("ECOA")[5]. Although the plaintiff originally brought suit on behalf of all black automobile applicants who had been denied a loan with New South, he amended his complaint on June 19, 1997 to limit the scope of his allegations. The amended complaint alleges that New South treated employees of New South and Collateral Mortgage who applied for automobile loans differently based on their race.

## Analysis

A plaintiff can present a prima facie case of discrimination under § 1981 and the ECOA by

---

[4]The plaintiff obtained a loan from AmSouth Bank under different terms than the terms proposed to New South.

[5]The plaintiff's argument that there was a per se violation of the ECOA is without merit.

3

presenting direct evidence, circumstantial evidence, or statistical evidence. In this case, the plaintiff has not presented any direct or statistical evidence of discrimination. Because the plaintiff is left only with circumstantial evidence, the case must be analyzed under the burden-shifting approach of McDonnell Douglas/Burdine. See McDonnell Douglas Corp. v. Green, 411 U.S. 293 1973); Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981). Under the burden-shifting approach, the plaintiff must first establish a prima facie case of discrimination by establishing that (1) he belongs to a protected class, (2) he was a qualified candidate for a loan, (3) he was unable to obtain the loan, and (4) that qualified candidates outside his protected class were able to obtain a loan. See Walker v. Mortham, 158 F.3d 1177 (11th Cir. 1998). Once the plaintiff presents this prima facie case, the burden shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for the adverse action. See Burdine, 450 U.S. at 256-59. If the plaintiff can meet its burden of production, then the burden shifts once again to the plaintiff to show that the employer's alleged nondiscriminatory reasons were merely pretexts for discrimination. See McDonnell Douglas, 411 U.S. at 804.

In this case, the plaintiff has not presented any evidence of discriminatory intent with regard to New South's decision to deny his automobile loan application. Even assuming that the plaintiff has presented an adequate prima facie case of discrimination, which is unlikely[6], the defendant has offered legitimate, nondiscriminatory reasons for denying the plaintiff's loan application. The plaintiff has presented no evidence that the loan officer who denied his application even knew of his race. Indeed, it appears from the evidence that the loan officer who initially looked at the plaintiff's application was presented with financial and employment information that did not indicate race.

---

[6]The court finds that there is sufficient evidence to show that the plaintiff was not qualified to receive the loan.

4

Additionally, it appears that the senior loan officer who later evaluated the plaintiff's application was presented with the same type of non-racially indicative information. The plaintiff admits that race was not discussed in his conversation with the senior loan officer and that he received a letter from New South stating the primary reasons for the loan denial. Because it is never possible in evaluating loan applications to get entirely away from subjectivity, and because the plaintiff has not presented any evidence to show that the defendant's proffered reasons were pretextual, the defendant's motion is due to be granted.

Date: _January 23_, 1999.

_____
Chief Judge Sam C. Pointer, Jr.

Service List:

    Kenneth O. Simon
    Anne R. Yuengert
    Rusha C. Smith
    Hycall Brooks, III
    Charles Brooks